WilsoN, Chief Justice, delivered the following dissenting opinion: It appears, from the facts in this case, that the relator, •Redman, was elected a justice of the peaee, at the August election, 1843, for the Columbus district, which district is situated within the territorial limits assigned to the proposed county of Marquette. The returns of the election were made to Wren, who is the clerk of the county commissioners’ court of [* 278] Adams county, who has refused to open the returns, and give the said Redman a certificate of his election, so as to enable him to obtain a commission as a justice of the peace of Adams country. The application to this court for a writ of mandamus grows out of the act of the legislature passed in 1848, for the division of Adams county, and the creation of the county of Marquette, out of a portion of the territory of the former ; and, by the agreement of the parties, the allowance of the writ is made to depend upon the question, whether the jurisdiction of Adams county extended over the territory of Marquette county, in August, 1843; or in other words, whether the territory of Marquette was detached from Adams county, in August, 1843, and was a separate and distinct county at that time, for all county, and all other purposes, except judicial. The majority of the court are of opinion that said territory of Marquette was a separate and distinct county, in August, 1843 ; and I believe it is admitted, and at any rate cannot be controverted with any show of reason, that if it was a separate county in August, it became such, upon the passage of the act in 1843, which went into immediate operation ; as there was no action or circumstance to change its character, between those periods of time. To this opinion I dissent, and will state the reasons for so doing. The question submitted to the decision of the court depends upon the construction of the act of the legislature of 1848. By the first section of which it is provided, that a certain portion of the now county of Adams, (within the described boundaries,)'be and the same is hereby created into a new county, to be called the county of Marquette. The second section provides for the election of county officers on the first Monday of April, 1848. The fourth section declares, that as soon as the county officers shall have been elected and qualified, the said county of Marquette shall be considered organized, and notice thereof shall be given to the judge of that circuit, and circuit courts shall thereafter be held in said county. And by the fifth section, all suits and prosecutions that bave, or may hereafter be commenced in the circuit court of the county of Adams, before the organization of the county of Marquette, shall be prosecuted to final termination in the circuit court of the county of Adams. These, 1 believe, are all the provisions of the act necessary to recite, in order to understand the question before the court. The other parts of the act relate to the court house, the revenue, and the time and manner of holding elections, etc. In the construction of this act, it has been said tbat a large number of citizens feel a deep interest. I have, therefore, as far as in my power, given it that consideration which its importance deserves, and from the view I have taken of the subject, I am constrained to say, that in my opinion, the construction given the statute, by the majority of the court, is incom- [*279] patible with both the letter and spirit oí the statute. But before I give my views upon this point, upon which I propose to rest my opinion, it may be proper briefly to enquire, how far it is within legislative competency, to impart to this act, such an operation as it must necessarily have, under the construction it has received. If it can be made to appear, that the legislature does not possess the power, that will afford a strong objection against imputing to that body the intention of exercising it, unless the language will admit of no other interpretation. For the more convenient government, and better administration of justice, the whole state has been laid off and organized into counties. This division and organization is sanctioned by the constitution ; and I admit the doctrine generally, that the state may create, modify, and destroy counties, and that they may carry this power into effect by any appropriate means tbat does not conflict with the constitution. But while T admit that the legislature may destroy a county, I am not to be understood as admitting tbat they can deprive any portion of the territory of the state of a county organization and government. This would be to place a portion of the citizens out of the pale of law and government, and would produce a complete state of. anarchy. Such an act of the legislature would, in my opinion, be an abandonment of its highest obligations, and an infringement of the spirit of the constitution, if not its letter. The only manner that occurs to my mind, by which a legislature can destroy a county, is, by annexing it to one' or more organized counties. No interregnum would then take place; the government of the county to which it was annexed, would be extended over and embrace it, simultaneously with its annexation; and thus no evil or inconvenience would occur. I have said thus much upon the power of the legislature over the counties of this state, to prevent any misapprehension as to what was meant by this court in the case of Coles v. The County of Madison, Breese 120, in which it was said, by way of illustration, that the legislature has authority to destroy a county. The authority of the legislature to pass laws for the creation of new counties, and provide for their organization, is also admitted, with the qualification, however,' growing out of the peculiar provisions of our constitution, which requires the co-operation of the people of the new county, in order to organize it. By the constitution, the qualified voters of the different counties are to elect county commissioners, a sheriff, and coroner, and by various laws, they are to elect such other county officers as are essential to an organization of the county. Had therefore any portion of the voters of Marquette held an election, and elected county officers, as the law required, and had they qualified, the county [*280] would have been duly organized, and would have been one of the counties of the state. But no such election has been had, and it is admitted that until the officers are elected and qualified, the county cannot be organized. From these considerations, then, it results, that the concurrent action of both the legislature and the people are necessary to create a new county. The legislature must pass the law defining the limits of the county, and authorizing the election of officers; then, and not until then, is the new county created. The act of the legislature only forms an inchoate county; the act of the people is necessary to ratify it, and give it vitality and being ; and until such ratification, all the corporate franchises remain in abejmnce. This view of the subject accords with the principle laid down by the supreme court of the United States, in the case of the Dartmouth College v. Woodward, 4 Peters’ Cond. R. 526, that when a corporation is to be brought into existence by some future acts of the corporators, the franchises remain in abeyance until such acts are done; and when the corporation is brought into life, the franchises instantly attach to it. But for the provision of our constitution, I should entertain no doubt but the legislature, in virtue of its general power to pass all laws that are necessary for the promotion of the general welfare, might, if its members deemed it expedient, have constituted a new county, and organized it in any manner they thought proper. But under the provision of the constitution referred to, the right of organizing, and consequently the right of refusing to organize, seems clearly to be vested in the people, and if so, the legislature cannot divest them of it. Whether this provision, requiring the agency of the people in organizing a county, be a wise one or not, is not a question of judicial cognizance. It may however be observed, that in a government like ours, in which the sovereign power is lodged in the hands of the people, there can be no danger in allowing to the people a negative voice in the creation of a municipal corporation, which is usually granted as a boon, and in which they have the deepest interest: and it is also to be observed, that the authorities referred to in relation to the power of the legislature to create municipal corporations, without .the consent of the corporators, can have no application to this case, under the view I have taken of it, inasmuch as the objection to the exercise of this power, in the present case, grows out of the peculiar provision of our constitution. But if we concede to the legislature the power of creating a county, without organization and county government, still the additional question remains, as to whether it intended, by the act under review, to exercise it. In my opinion the legislature did not. Upon this point my conviction is so clear, that I propose resting my dissent to the opinion of the majority of the court mainly upon it, while what I have said, as to the want of power in the legislature, is, I think, entitled to serious consideration, and will afford [*281] some aid in arriving at the intention of that body. From some of the provisions of the act of 1843, it may be inferred that the legislature proceeded upon the supposition that the inhabitants of Marquette would organize by the election, of county officers; but I do not admit that that act will bear the interpretation that the legislature intended the territory of Marquette should be detached from Adams county, and be created into a separate and distinct county, upon the passage and operation of the act, (which were simultaneous,) without regard to its organization. This however is the construction contended for, and in support of it, much stress is laid upon the first section of the act, which provides that a certain portion of the now territory of the county of Adams (which is there described), be, and the same is hereby created a new county, to be called- the county of Marquette. This, it is said, is a legislative declaration of such potent energy, as, of itself, to create the county of Marquette at once, without anything more. If that be so, it settles the whole question in dispute ; but this is an assumption, not proof, and cannot therefore be admitted. The first section of the act, standing alone, and without reference to the other parts of it, would seem to countenance the conclusion drawn from it. But considered in connection with other sections, it will appear manifest that it was intended to create the county only upon the condition of its organizing. It is an acknowledged principle, that when the legislature adopts a statute that lias received a settled construction, they are presumed to have adopted that construction also. This principle may be fairly applied in the construction of this act. By reference to the statute book, it will be found, that the legislature has, at different times, passed various acts for the creation of new counties, all of them similar to the present one; and the first section of several, identical with the first section of this, except the variance necessary to describe their respective boundaries ; yet according to the practical construction of these acts, the counties were to be created and go into operation only at a future day, and when organized [and in some instances they were to be created only upon the contingency of a ratification by a majority of the voters of the proposed county, a ratification which in some cases was never received, as was the fact with regard to the contemplated county of Milton, and it consequently never was created). This uniform operation of former statutes, passed for the creation of new counties, by which, in every instance; organization was regarded as necessary to their creation and separate existence, must have been well known to the legislature, and affords a strong presumption that it intended that this one should receive the same construction, and have the same operation. If the legislature had not intended by [*282] this act, that organization, by the election and qualification of county officers, should be necessary to the creation of the new county, it would not have adopted language and enactments so like those of other statutes, which had received that construction. Nothing would have been easier, or more probable, under such circumstances, than to have declared that the county should be created, and go into operation, upon the passage of the act, or at some other appointed time, if such had been the intention, in place of declaring what acts on the part of the inhabitants would constitute an organization. I can perceive ño object in this declaration, but to fix the epoch of the creation of the county. In construing a statute for the purpose of ascertaining the intention of the legislature, we are not to limit our attention to a single sentence or section of a statute. We are not therefore to conclude, from the first section of this act alone, that the legislature intended that the territory of Marquette should become a county before it was organized ; but we must construe this section in connection with others, so as to arrive at a correct conclusion. The fourth section provides, that as soon as the county officers of Marquette shall be elected and qualified, the said county shall be considered organized ; and by the fifth section, all suits and prosecutions that have been commenced, or may hereafter be commenced in the circuit court of the county of Adams, before the organization of the county of Marquette, shall be prosecuted to termination in the county of Adams. These provisions, when taken in connexion with the first section, qualify its operation, and clearly indicate the intention of the legislature, that the existence of Marquette, as a distinct county, should not take place, until it was organized according to the fourth section. If this was not the intention, 'why require suits’ and prosecutions, arising within the territory of Marquette, to be commenced and prosecuted in the county of Adams, until the organization o'f the former, and no longer. In this view of the subject, the legislature will avoid the absurd incongruity of requiring the judicial proceedings of one separate and distinct county, to be carried on in another ; and in this view of the law, it will also escape the no less absurd incongruity and anomaly, of having created a mongrel half-kind of county, a county for some purposes, and for other purposes, equally legitimate, nota county. Another rule in the construction of a statute, strikingly applicable to this case, is, that when great inconvenience or absurd consequences are to result from a particular construction, that construction should be avoided, unless the meaning of the legislature is plain and manifest. 1 Blae. Com. 98 ;■ 2 Cranch 858. This rule, which requires the court to look to the consequences of a particular construction, and if inconvenient or absurd consequences are likely to result from it, then, avoid it, does, in my opinion strongly admonish us to avoid that construction which will detach the territory of Marquette from Adams county, [* 283] and constitute it a separate county before its organization. Some of the consequences of this construction will be, that & large portion of the citizens of the State will be put out of the pale of government, and while the government will be unable to collect from them the taxes necessary for its support, they will be denied the administration of justice, within their county, and deprived of the right of their electoral franchise, a right that lies at the foundation of all our institutions, and without which there is no security to the people, against wrong and oppression, under any form of government. Until Marquette is organized, and county officers are elected, no circuit courts can be held in it, by the express provision of the statute. But it was contended in the argument, that although Marquette was a county for internal government, and political purposes, that for all judicial purposes, Adams could exercise jurisdiction over it. This position I deem incorrect; no principle is more universally acknowledged, than that persons charged with tbe commission of crime must be indicted by a grand jury of the county in which the crime is committed. The constitution also secures to every person charged with a criminal offence, a “ speedy public trial by an impartial jury of the vicinage.” This expression, by a jury of the vicinage, is well understood to be a jury of the county where the crime is committed. This being a right, then, secured to the accused by the constitution, cannot be taken from him against his will, by the legislature. The. perpetration .of a crime therefore in the county of Marquette, however atrocious it may be, cannot be punished. The reasons that led to the adoption of this provision in the constitution of the states of the Union, is well understood. The practice of sending the accused ábroad for trial, remote from his friends and witnesses, was regarded bjr the founders of our government, as unjust and oppressive, and although the hardship in this case may be considered comparatively trifling, as the counties are adjoining, yet if the accused can be sent to the adjoining county for trial, he may, upon the' same principle, be sent to the most remote county in the state. The wrong in both cases is the same; they differ only in degree; and are both alike forbidden by the constitution. Other injurious consequences flow from that construction of the act, which creates Marquette a county before organization. The inhabitants of that territory cannot be coerced to contribute their proportion of revenue. They have no officers to assess or collect it, and for a like reason, it is utterly impossible for these people to exercise the elective franchise in the manner prescribed by law; and it requires no comment upon the value and importance of this privilege, to prove the extent of wrong done by withholding it from a single citizen entitled to its exercise; and it is no [* 284] answer to the objection, in reference to any of these pernicious results, that they can be corrected by subsequent legislation. That is an argument that might, with equal propriety, be urged in favor of any law however unjust and unconstitutional; and is in effect saying that we should submit to wrong, because we are entitled to redress. It was also urged by counsel, that notwithstanding the time fixed by law for organizing the county of Marquette has passed, that the people can yet organize under a proclamation of the governor. This is certainly a new doctrine, that gives to the proclamation of the governor of this state, the force and effect of law, and one which I think calls for no argument for its refutation, although urged with apparent seriousness by able counsel. It is admitted that the recognition of Marquette as a county, in its present condition, will place the people of that county in an unfortunate situation; but it is said they have brought the evil upon themselves; by neglecting to vote for and elect county officers; that this was not merely a privilege, but a legal obligation, and that their complaints, now, are like those of a man who, having refused to vote, should complain that he was denied the exercise of the right. This I think is a misapplication of the case. I do not understand that these people complain of having been denied the privilege of voting for county officers, on the first Monday in April; but they complain, that because they omitted to vote on that occasion, they are to be denied the exercise of this right, at every subsequent election that may occur. This complaint cannot; be regarded as unreasonable, for by this construction, a statute for the creation of a new county, which is usually regarded as a favor to the inhabitants, is converted into a penal enactment, by depriving them of a cherished and valuable franchise, and that, too, without the commission of any offence known to the law. The position that a citizen is under a legal obligation to vote at an election, cannot be correct. If such an obligation existed, it could be enforced by legal process; but I presume it will not be contended that this can be done. I cheerfully admit, that every one entitled to this valuable privilege is under a moral and political obligation, to exercise it in such a manner as in his judgment is best calculated to promote the public welfare; but there is no such legal obligation; and the legislature can no more compel a man to vote, than they can say for whom he shall vote. Such a power would be subversive of the fundamental principles of the government. The people of Marquette then have violated no legal obligation in failing to elect county officers, and organize the county, and are not, therefore, obnoxious to the charge of nullification and rebellion to the laws. I regard the act under consideration as a tender on the part of the legislature, to the people of the territory of Marquette, of the privilege of having a new county, but which was not to go into operation, until by the agency of the people it was organized by the election and [*285] qualification of the county officers, as the act requires; and that contingency not having happened, the territory of Marquette still constitutes, for every purpose, a part of the county of Adams. This construction I believe is in harmony with the spirit of the constitution, and accords not only with all the constructions that have been given to similar-acts passed for like objects, but also with the intention of the legislature as expressed, and as ascertained by the application of well established rules of interpretation to the act itself; while so many and such serious evils must necessarily result from an opposite one, which we ought not to suppose the legislature contemplated producing, when, as in this case, such an intention is not plainly expressed, that I can not subscribe to it. I am, therefore, of opinion that the mcmdamus ought to be allowed. Lockwood, Justice, concurred in the dissenting opinion of chief justice Wilson; and Browne, justice, said he dissented from the opinion of the majority of the court, believing that the county of Marquette was not created, until the officers were elected, and the county organized. Judgment affirmed.